1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3      - - - - - - - - - - - -    X

4    UNITED STATES OF AMERICA,    :    09 CR 648

5                                 :

6         -against-              :

7                                      United States Courthouse
                                       Brooklyn, New York
8    SULEJMAH HADZOVIC,           :

9                                      April 15, 2015
              Defendant.          :    3:00 o'clock p.m.
10

       - - - - - - - - - - - -    X
11
                        TRANSCRIPT OF SENTENCING
12               BEFORE THE HONORABLE JOHN GLEESON
                    UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14
     For the Government:          LORETTA J. LYNCH
15                                United States Attorney
                                  BY: SETH DuCHARME
16                                    SHREVE ARIAIL
                                  Assistant United States Attorneys
17                                271 Cadman Plaza East
                                  Brooklyn, New York
18

19   For the Defendant:           LISA HOYES, ESQ.
                                  Federal Defenders of New York
20

21   For Probation:               MICHELLE ESPINOZA

22
     Court Reporter:              Gene Rudolph
23                                225 Cadman Plaza East
                                  Brooklyn, New York
24                                (718) 613-2538

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

                GR      OCR      CM      CRR      CSR

2

1          THE CLERK:  United States versus Sulejmah Hadzovic.

2     Counsel, please come forward, Mr. Hadzovic.

3          THE COURT:  Don't go away.  I want to talk to

4     Officer Espinoza in the hall, if I might.

5          (Pause).

6          State your appearances, please.

7          MR. DuCHARME:  For the United States, Seth DuCharme

8     and Shreve Ariail.

9          Good afternoon, Your Honor.

10          THE COURT:  Good afternoon.

11          MR. HOYES:  For Mr. Hadzovic, Federal Defenders, by

12     Lisa Hoyes.

13          Good afternoon, Your Honor.

14          THE COURT:  Good afternoon.

15          Good afternoon to you.

16          THE DEFENDANT:  Good afternoon, Your Honor.

17          THE COURT:  There is a presentence report and an

18     addendum.  Have you seen these documents?  Have you read them,

19     Ms. Hoyes?

20          MR. HOYES:  Yes, Your Honor.

21          THE COURT:  Have you read them?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Have you had enough time to go over them

24     with your lawyer?

25          THE DEFENDANT:  Yes.

GR        OCR        CM        CRR        CSR

1              THE COURT:  Okay.  Any objections to the presentence

2    report that you want me to address?

3              MR. HOYES:  No, Your Honor.

4              THE COURT:  How about from the government?

5              MR. DuCHARME:  No, Your Honor.

6              THE COURT:  All right.  Thank you for your response

7    to part of my order this morning, that is, your proposed

8    redactions.  I was going to propose the same ones.

9              You already filed that publicly?

10             MR. DuCHARME:  We have, Your Honor.

11             THE COURT:  That's fine.

12             I think to the extent that the 5K1.1 motion remains

13   redacted, which is only in a very targeted minor way, it's

14   fully justified by the interest asserted in your request, to

15   keep the letter under seal.

16             The rest of it, as I told you in my order this

17   morning, I didn't think warranted continued sealing.  But I am

18   in agreement with the government.

19             Do you want to be heard on this, by the way?

20             MR. HOYES:  No, Your Honor.  I am in agreement with

21   the redaction.

22             THE COURT:  Okay.

23             MS. HOYES:  I would just mention that I also filed

24   my letter under seal in light of the government's submission

25   under seal.  I am happy to refile that.

4

1          THE COURT:  Yes, please do.  To the extent there is

2     a little bit of information that remains unavailable to the

3     general public, that sliver of information I think is properly

4     sealed up in the interests of the investigative concerns of

5     the government.

6          Do you want to be heard with regard to the

7     appropriate sentence?

8          MR. HOYES:  Yes, Your Honor.

9          THE COURT:  Thank you for your submission, which is

10    excellent.

11         MR. HOYES:  Certainly, Your Honor.

12         In that submission I discussed Mr. Hadzovic's

13    extraordinary transformation over the past -- I call it six

14    years.  It's not a complete six years but it's quite close to

15    six years.  He's pretty much changed everything about his life

16    since he renounced this conspiracy and returned to his family

17    in 2009.

18         First of all, he has renounced violent jihad.  He

19    has reeducated himself.  He now has a completely different

20    view of his religion than he did when he was 19 years old and

21    found himself in Cairo, and this is an aspect of his

22    transformation that I think Mr. DuCharme can speak about more

23    competently since it relates so heavily to his extensive

24    cooperation in this case.  Suffice it to say, I think he has

25    proven to us over the years and demonstrated that he knows he

1   had it wrong when he was 19 and committed this crime.

2          Second, Mr. Hadzovic himself describes his

3   19-year-old self as disrespectful, ill mannered, impolite, and

4   I think this is an unfathomable concept to anybody who has

5   known him in the context of this case.

6          Your Honor observed his demeanor on the witness

7   stand for days.  The government Pretrial Services have gotten

8   to know Mr. Hadzovic quite well and it's abundantly clear that

9   this is a gentleman who is a rule follower, who is humble and

10  who is, I would say, polite to a fault.

11         And, third, he even looks different than he did.  He

12  was overweight.  His doctor told him that he was at risk of

13  developing diabetes.  He changed his diet and he began

14  exercising and he lost over 80 pounds.  I think that shows

15  that he values his life, that he values his importance to his

16  family, and that he wants to be here to contribute to this

17  world.

18         In addition to those aspects of his transformation

19  are the more concrete aspects.  For example, he's earned one

20  college degree.  He's on track to earning a bachelor's degree

21  in economics from Queens College.  He's shown that he is

22  completely devoted to his family, which is especially

23  important in light of the horrific tragedy that the family

24  endured a year ago.

25         THE COURT:  Yes.  I noticed that the letters you

1    sent, I am not faulting you for this, but I noticed the

2    letters predated the death of his younger brother, the letters

3    from the family.

4         MR. HOYES:  The letters are all quite old.  They are

5    from 2011 and the family has really gone through a lot and I

6    didn't ask them to write new letters.

7         THE COURT:  No.  For all the heartache that

8    the -- sorry to interrupt.

9         MR. HOYES:  That's fine.

10         THE COURT:  I am going to anyway.

11         For all the heartache that your client put his

12    family through, which comes through loud and clear in those

13    letters, I get a little eerie reading them knowing that

14    unbeknownst to them as they wrote it they'd have even greater

15    tragedy befall them.

16         MR. HOYES:  That's right, Your Honor.

17         I would mention that Mr. Hadzovic's father and

18    brothers are here today.  His mother knows that the sentencing

19    is today and is not able to be here because emotionally she

20    could not endure this event.  His sister is not here because

21    someone needs to be home with his mother and his youngest

22    brother, who is still a little boy.

23         THE COURT:  All right.

24         MR. HOYES:  Your Honor, in addition to those things,

25    his education, his commitment to his family, he does plan to

GR       OCR       CM       CRR       CSR

1  get married.  He would like to get married and start a family

2  of his own, and I think that his transformation away from

3  jihadism has absolutely been borne out over the past many

4  years through his words, and his actions, most importantly.

5          Your Honor, there was an article in the paper, in

6  The Times, a couple of months ago about a district judge in

7  Minnesota who has a case with a young person charged with a

8  terrorism offense and this judge decided to take the bold move

9  of releasing this person pretrial and having him embark on

10  some sort of a rehabilitation program, where he'd be

11  supervised and also receive some type of rehabilitation

12  targeted at this jihadist mindset.  I know in other countries

13  there are programs that young people are put in to try to

14  rehabilitate them.  I submit, that what Mr. Hadzovic has done

15  here is completed a self-directed, completely self-directed

16  rehabilitation and deprogramming path for himself.

17          When Your Honor is thinking about the goals of

18  3553(a), I know that Your Honor knows well that prison is not

19  the only way that a criminal defendant can be punished and, as

20  I stated in my letter, I believe that Mr. Hadzovic has been

21  punished and that he will be punished for the rest of his life

22  based on his conviction and his notoriety for his conviction

23  and his cooperation.

24          But I also want to mention that essentially what he

25  cooperated against is Muslim extremism and Muslim extremists

1  as a group have a proven track record of issuing violent

2  fatwas, of having long-term memories, of having a very

3  expansive global reach and of seeking and having determination

4  to take revenge on its perceived enemies.

5        I think that Mr. Hadzovic is confronted with a

6  lifelong exposure of risk and retaliation based on his

7  cooperation here and that may be the biggest part of his

8  sentence.  I think that's a huge price for him to pay and I

9  think that he doesn't need incarceration on top of that and

10 the other punishment that I believe he has faced as a result

11 of his crime.

12       Your Honor, in terms of what message we send to the

13 world in sentencing Mr. Hadzovic here today, certainly I

14 understand the goals of general deterrence, but it also seems

15 to me that in this day and age it is important to send the

16 message that if you do renounce and you do cooperate and you

17 do change your way of life and your thinking, that there may

18 be an outcome other than a lengthy prison sentence.

19       Your Honor, I submit that Mr. Hadzovic needs to go

20 home to his mother and his father and his brothers and his

21 sister and he needs to go home thinking and feeling that this

22 chapter of his life, the part where he has been fearful of a

23 prison sentence every day, that that part has ended so that he

24 can continue his path of rehabilitation and productivity and I

25 submit that a sentence that does not involve prison will serve

1  those goals and so I ask you not to send him to jail.

2          THE COURT:  Okay.  Thank you.

3          Just one sister, right?

4          MR. HOYES:  Yes.

5          THE COURT:  You have a right to speak before

6  sentence is imposed.  Is there anything that you would like

7  tell me?

8          THE DEFENDANT:  Yes, Your Honor.

9          Thank you, Your Honor.

10          I stand before you today hoping for leniency in my

11  sentencing and that Your Honor may see me today for who I am.

12          Your Honor, this whole ordeal that has been with me

13  for the past six years is something that was a true nightmare

14  for me but at the same time it was something that guided me to

15  a better understanding of what is important in life, from

16  things like time and freedom and family and friends.

17          We all face hardships in our lives, whether it be

18  something minor or major.  I believe that no matter how great

19  the hardships are, there is always something that we can

20  benefit out of it.  This situation was a great hardship on me

21  and it was something I put upon myself and upon my loved ones.

22  It was also something which gave me time to think and time to

23  search for truth.  It was also a hardship which brought me to

24  hold dear those close to me and respect those around me.

25          This was a trial in my life and though I wish it

GR      OCR      CM      CRR      CSR

1  could have been under better conditions, it was a means to

2  bring me to a better understanding, both as a Muslim and a

3  member of society.

4          In these past six years, I have educated myself in

5  the worldly matters by attending college and receiving diploma

6  in business administration, and in the process of receiving my

7  second one soon in economics.  I have also educated myself

8  from religious affairs by listening and taking only from

9  authentic sources and not from storytellers and those who wish

10  to spread corruption and violence on the earth:

11          In my religious studies I have learned just how

12  deviant my way of thinking was and how to refute those who

13  tread the same path.  I have then tried with what little

14  knowledge I possess to call others to good and warn others

15  from those who wish to spread corruption both in the world and

16  in the religion.

17          In the past year, I lost my younger brother and it

18  was hard and emotional, especially when it was someone I used

19  to protect and look after growing up.  In that time my mother

20  had become ill due to depression and it became my duty as a

21  son to always look after her.  I also help my father and

22  brothers in any work that is needed so that they do not have

23  to overwork themselves.

24          I busy myself with studies and good companionship in

25  order that I may protect myself and my family from any more

1  hardships.  I try, Your Honor, as much as I can, to be a

2  better person, not just today but every day after.

3           After my brother's death, I and my family prepared

4  food and clothes in feeding and clothing those who are in need

5  of it and I feel that because we are fortunate of having many

6  of the basic necessities in life, we must give others what we

7  want for ourselves.  I also in that time aided in burial

8  service for Muslims because after my own personal experience

9  in washing and shrouding and burying my brother, I realized

10 just how valuable time and family are in this life and how we

11 have to make the most of it.  These occurrences made me want

12 to do good for others and I feel it was something I was

13 obliged to do.

14          Your Honor, I ask you to please not send me away

15 from my family, away from this life in which I began to

16 progress in, away from my goals and dreams in life, away from

17 establishing myself in society.  Your Honor, I ask you to look

18 at me today and to look at all that I have tried to do to make

19 myself a better person, all I have tried to do to prove that I

20 truly deeply am regretful for what I did, and if I could show

21 you my intentions I would.  But all I can do is tell you, Your

22 Honor, that I mean no one any harm and truly wish for everyone

23 good.

24          I would like to conclude by thanking the judge and

25 the Court for their time and consideration.

GR      OCR      CM      CRR      CSR

1            THE COURT:  All right.  Thank you.

2            Have you had an opportunity to give some thought to

3    the proposed condition I mentioned in the order this morning?

4            MR. HOYES:  Yes, Your Honor.

5            We don't have an objection to the first proposal

6    that Probation has made, what they termed the least

7    restrictive condition, but we would object to the more

8    restrictive condition on the grounds, A, that we don't think

9    it is necessary.  Mr. Hadzovic has demonstrated that he is not

10   a jihadist over the past six years.  But, more importantly, it

11   would be such a significant impediment to him succeeding in a

12   modern day.  What it would mean is that he would be restricted

13   to having only one computer.  He wouldn't be able to have a

14   Smartphone or an IPad.  He wouldn't be able to access

15   computers at school or at a workplace, and I just don't think

16   that is necessary.

17           THE COURT:  Okay.  Thank you.

18           Mr. Ariail, Mr. Ducharme?

19           MR. DuCHARME:  Your Honor, I think it's only

20   appropriate to start unfortunately with the seriousness of the

21   offense.  We can't ignore it.

22           The threat of terrorism since 2009 when the

23   defendant was involved in these events has not abated.  It's

24   very much on our minds, including the threats posed by

25   Americans, unfortunately, who offer assistance to terrorist

1    organizations.  We take the crime, of course, very seriously

2    and from recent prosecutions in our office you can see that,

3    if anything, the volume of work that's gone into prosecuting

4    these types of cases only increased.

5          But there are a couple of things about this

6    defendant, some of which you know and some of which I would

7    like to highlight for you, I think are critically important to

8    your imposition of sentence in a terrorism case, which is what

9    this is.

10         I know, Your Honor, that you are thoroughly familiar

11   with the quality of the defendant's testimony because you

12   personally observed it and there is little I feel I need to

13   say about that.  What I do want to do, though, is give you

14   some insight into the things that you didn't see.  I would

15   like to start back in the summer of 2009 when these events

16   were unfolding from our perspective.

17         The United States Government had partial visibility

18   into a terrorist plot.  We knew that there were two Americans

19   from New York City who had traveled overseas and were, for all

20   intents and purposes, seeking to commit terrorist acts.

21         At some point we discovered that one of them had

22   come back to New York City, and that was Mr. Hadzovic.  We

23   were presented with a very difficult challenge, which was, how

24   long should we wait, how complete a picture must we have

25   before we can act both overseas with our foreign partners and

14

1   here in New York, to protect innocent people from a potential

2   act of terrorism.

3            With Mr. Hadzovic, we took a bit of a gamble and we

4   approached him in New York City, and some of the

5   investigators, John Ross and Hugh Smith, who were part of that

6   are here today, and we knocked on his door and we said,

7   Mr. Hadzovic, we know you were involved in something very

8   serious and you have a choice to make.  You can do the right

9   thing and you can help us, or you can await the consequences

10  but this isn't going away.  That's essentially what we said to

11  him.

12           Without any hesitation whatsoever, Mr. Hadzovic

13  agreed to cooperate fully with the United States Government.

14  He came to our office.  He sat down in a room.  He

15  was -- Ms. Hoyes used the word a gentleman in describing him.

16  He was a gentleman from the moment we first met him, Your

17  Honor.

18           Certainly, there was a time preceding that when

19  Mr. Hadzovic made some terrible decisions that constituted

20  serious crimes, but when we asked for his help, we asked him

21  to make a choice.  In my view, in our view, he made the

22  correct choice.  He sat down in our office and he talked and

23  he talked and he talked for days.  During those conversations,

24  there was no indication to us that he was anything other than

25  candid and forthcoming and well meaning and that he had

1    already thrown a switch, that he was going to try to make up

2    for the mistakes that he had made.

3         The value of that, I really can't underestimate,

4    because we had a partial view.  I don't want to go into too

5    much detail about what we could or couldn't see.  But there

6    were areas of shadow and Mr. Hadzovic turned on a light bulb

7    and in those few days that we met with him the entire plot

8    became laid bare.  Within a matter of days, we were

9    coordinating with foreign partners to disrupt his codefendant

10   overseas and within a matter of weeks we had presented an

11   indictment to a grand jury in this district and his

12   codefendant was presented in September of 2009.  He was

13   critical, critical to the investigation and the prosecution.

14        Not only that, Judge, but if you look historically,

15   and I know you know this from the testimony, but that wasn't

16   the first time Mr. Hadzovic had made the right decision under

17   a certain amount of pressure.  You can imagine the anxiety he

18   must have felt when the JTTF showed up at his door and he knew

19   he was coming back from overseas and he knew what he had done

20   and really had no guarantees at all about the consequences

21   that faced him.  But that wasn't the first time he'd been

22   tested.  He was with his best friend, essentially cutoff from

23   nearly all contact with friends and family in the United

24   States and he was overseas having committed to a very serious

25   conspiracy.

1          I think it speaks to his intelligence and his

2    thoughtfulness that where so many others that Mr. Ariail and I

3    have investigated have not stopped to think and question their

4    behavior, had not compared what they saw in a jihadist video

5    to the reality of meeting the terrorist facilitator, whom he

6    met in the flesh, compared that, looked at the experience and

7    said, I choose not to do this.  And he leaves his best friend

8    alone overseas.  You can imagine the social pressure, the

9    anxiety about the stigma associated with abandoning his friend

10   overseas and he says this is not for me.

11          Now, in a perfect world, would he have called the

12   FBI, the JTTF, and said there are facts you need to know

13   about?  Yes.  That's what we hope people would do.

14          We also have to realize that he is a very young man

15   in a difficult situation, and he makes the right choice.  He

16   makes the right choice to abandon the conspiracy.  When we

17   confront him and ask for his help, he makes the right choice

18   to assist us.  The assistance doesn't really -- I really need

19   to give some color to this judge.  It's not just the insight

20   he provides, the illumination to this particular terrorist

21   conspiracy.  It is the opportunity to sit down with an

22   intelligent, compassionate, caring person who is trying to

23   make the right choices and have that person explain to you how

24   a young American man gets on the path to jihad and to consider

25   ways that a young American man might come off the path of

1  jihad.

2      I can tell you that the tools in our armory for

3  countering violent extremisim in America and elsewhere right

4  now are as broad as they possibly can be.  So when we talk

5  about the continuing national security effort to deal with a

6  type of person, a young American who embraces jihadist

7  propaganda and wants to travel overseas and fight jihad and we

8  can sit down with Mr. Hadzovic and he can articulate exactly

9  how that process worked, what his thought process was in

10  deciding to abandon that plan and why he ultimately agreed to

11  talk to us, that has proven invaluable to myself and I'm sure

12  to Mr. Ariail in the dozens and dozens of interviews that

13  we've had since that summer night in 2009 when we walk into a

14  room with a man perhaps similarly situated to Mr. Hadzovic and

15  we can empathize to some degree, to be able to establish that

16  rapport, to be able to establish some part of empathy, to at

17  least understand, not approve, but understand how something

18  like this can happen.  It's very difficult for me to put a

19  qualitative value on that.  I'd say, it's been invaluable in

20  our practice.  In my experience he was the first, and one of,

21  if not the most important person in arming us to deal with a

22  battle that is a long way from over.

23      So the experience we had with Mr. Hadzovic went well

24  beyond what you saw on the stand.  It was countless hours in

25  conference rooms, not just for trial testimony, but in trying

1   to understand his mindset and to apply what we learned to

2   other cases, and while it can never excuse his decision to

3   abandon America and seek to join a terrorist group, it is

4   certainly of the strongest mitigation information that I can

5   contemplate, certainly in my practice experience.

6          So for those reasons, Judge, we seek no particular

7   sentence in this case.  We are confident that Your Honor is

8   armed with the facts that you need, but I think it just beard

9   highlighting how this defendant is very, very different from

10  many of the other defendants who we have encountered.

11         If you have any questions, Judge, we are happy to

12  respond.

13         THE COURT:  Thank you.

14         What's your take -- by the way, thank you,

15  Ms. Espinoza, for these proposed conditions --

16         PROBATION OFFICER:  You are welcome.

17         THE COURT:  -- which address my concern in this

18  morning's order.  There is a least restrictive one and a most

19  restrictive one.

20         What is your take on those?

21         MR. DuCHARME:  Your Honor, the least restrictive

22  seems reasonable to me.  I think -- look, we have a strong

23  interest in keeping in touch with Mr. Hadzovic, for safety

24  reasons if nothing else, for the reasons that Ms. Hoyes

25  outlined in her discussion.  We want to make sure he is safe.

1  So we are going to stay in touch with him.

2      It seems reasonable to me from time to time that he

3  could be subject to a search condition of his cellphone for

4  the reasons or in the manner set forth.  But I think the more

5  restrictive approach, Your Honor, it is not justified

6  certainly in my experience.  I don't think the government

7  would have any reservations about not monitoring on a constant

8  basis all Internet activity that he was exposed to.

9      THE COURT:  All right.  I was going to mention at

10  the end but you brought it up, so let me follow-up with it.

11      How does the risk assessment work for someone in his

12  position?  How do you protect him?

13      MR. DuCHARME:  Well, the --

14      THE COURT:  He needs to be protected.

15      MR. DuCHARME:  He does, Your Honor.

16      I think -- look, you certainly know from your own

17  experience that there are a variety of options that the United

18  States Government has, all the way from protective custody to

19  maintaining open lines of communication.

20      Now, the types of people who pose a threat

21  potentially to Mr. Hadzovic are the types of people we are

22  bringing the greatest amount of resources to investigate, in

23  any event.  In other words, we are watching very, very closely

24  any threat information directed at any American and on anyone

25  in the New York area and on anyone who would be involved in or

1    related to Islamic extremism jihadism.  We have a lot of

2    government resources directed at trying to anticipate threats.

3          Mr. Hadzovic would fall under that.  He's got the

4    ability to communicate directly with investigators.  He's had

5    that all along.  He will continue to have that.  If we learn

6    of something obviously that he is not aware of, we will act

7    quickly to mitigate the threat and to protect him.  If he

8    learns of something that we may not be aware of, certainly we

9    are in a position to move extremely quickly to take care of

10   that.

11         Judge, you know there are no guarantees in life and

12   things can happen, but he will not be ignored.  He will not be

13   forgotten and we maintain a very, very strong interest in

14   protecting him, if for no other reason than the next

15   conversation we have with a similarly situated person we want

16   to give them assurances that they will be protected if they

17   choose to follow a similar path.

18         THE COURT:  Okay.  That principle remains the same.

19   I guess you have a lot more tools available to you than I did

20   back in the Mesozoic Era doing the job you do.

21         Okay.  Anything further from you or your client?

22         MR. HOYES:  No, Your Honor.

23         THE COURT:  Well, I will start where Mr. DuCharme

24   started, that is, among the considerations I have to take into

25   account in imposing a fair and just sentence is how serious

1   your crime is and the need to impose a punishment for your

2   crime that will reflect its seriousness and promote respect

3   for the law.  There are actually more serious crimes but there

4   aren't that many of them than the one that brings you here

5   before me.  So that's a weighty consideration.

6           But, on the other hand, you've got a lot cutting in

7   your favor.  You are so young now, even though you have

8   matured, obviously.  You are still just a kid.  As far as I am

9   concerned, you were barely beyond the baby status when you

10  committed this crime.  You were just 19 years old.  It's a

11  very important factor.

12          Also important is this -- and thank you for your

13  submission, by the way, Mr. Ariail, Mr. DuCharme.  It's very

14  well done and important to me.

15          And as they put it in the letter, you made a very

16  critical decision, critical change of heart, is their phrase,

17  by abandoning this notion, this idea.  It's not a notion.

18  It's not an idea -- this crime and returning home.  I really

19  didn't need this letter to tell me this, but it certainly

20  reminded me that you had the good sense to abandon this plan

21  despite the extreme pressure from Betim Kaziu and I can

22  imagine that I was a 19-year old with close friends once.  Of

23  course, your cooperation, I have no doubt, saved lives,

24  probably including the lives of men and women in uniform.  So

25  that needs to be acknowledged.

GR      OCR      CM      CRR      CSR

22

1          And judges are so information starved, even in a

2   case like this where we are relatively better off because we

3   had a trial, the truth is, judges are starved for information

4   when it comes to sentence.  We take crumbs off the table.  And

5   the government, which knows you much better than I know you,

6   tells me that there are very few cases in which a defendant's

7   timely cooperation has been of such critical importance.  That

8   matters a lot.

9          There was no reason for this to happen, because it

10  was a recommendation that I didn't consider because it didn't

11  have the benefit of the 5K motion.

12         You didn't share this with counsel?

13         PROBATION OFFICER:  No.

14         THE COURT:  The reason I bring it up is, I am going

15  to quote to you from it for a moment because I think it gets

16  something exactly right and what it gets exactly right places

17  in such clear relief the power of redemption really, how

18  important that can be in a case like this.  What I mean is,

19  this recommendation, which I would have had distributed to

20  counsel if it were something I were going to consider but, as

21  I mentioned, it explicitly does not take into account your

22  cooperation.

23         It mentions the need for a message of general

24  deterrence, the message being, even those who plot acts like

25  the ones you plotted, don't even carry through with the plot,

1   the message needs to be that can't be tolerated and that all

2   those who seek to harm the interests and individuals of the

3   United States by terrorist acts will be punished accordingly.

4           I think that's exactly right.  That's mentioned with

5   I think just maybe even a -- well, I am not going to weigh

6   their importance, but a very important message to young people

7   like you who become religious and go down this path influenced

8   by terrorism propaganda that's so readily available to

9   disaffected young men like you and Betim Kaziu, and that

10   message is, they need to know, that as long as they do it

11   before real on the ground damage is done, that it is not too

12   late to turn back.  It's not too late to act on the impulse

13   that you acted on when you were in Cairo.  I think it's

14   important to encourage people who are in that situation to do

15   exactly that, to do what you did, even if it means maybe

16   running the risk of insufficiently punishing the crime you

17   committed.  You committed a crime.  That's important in and of

18   itself, but to turn back and then to protect the public, and

19   in this case, as I mentioned, men and women in uniform, is all

20   the more in need of encouragement and positive reenforcement.

21           So that's what I intend to do with this sentence.

22   It places a lot of faith in you in the fact that you have

23   turned around.  It's not blind faith.  The reason I issued

24   that order this morning is, you are going to be still

25   accountable to me during a period of supervision.  You are not

24

1   traveling anywhere.  You are not going to Cairo or any place

2   like it.  You are not -- I will go along with -- I am

3   persuaded that the least restrictive of these two alternative

4   conditions is appropriate, but I intend it to be a meaningful

5   enforcement of my condition that you not access this

6   information which when you were younger and more

7   impressionable influenced you to do what you did.  You are not

8   going near that stuff.  If you go near that stuff, you are

9   going to come back before me and it's going to take an even

10  better performance by Ms. Hoyes then to keep you out of jail

11  than she engaged in today to keep you out of jail.

12          Do you understand?

13          THE DEFENDANT:  Yes.

14          THE COURT:  The sentence is a sentence of probation.

15  I want it to be three years.

16          How long can I do it legally, Ms. Espinoza?

17          MR. HOYES:  Five, I believe.

18          PROBATION OFFICER:  I believe it's one-to-five.

19          THE COURT:  Okay.  Up to five, correct?

20          PROBATION OFFICER:  Yes.

21          THE COURT:  All right.  Five years probation.

22          It is not as though the only form of punishment is a

23  prison term.  It's really important I think for judges to look

24  for ways to punish people that are less destructive than

25  putting people in prison.  You have earned your sentence of

25

1  probation.  Your family needs you.  Your father needs you.

2  Your mother needs you.  So they will have you.

3          Also, you can contribute to your community.  You

4  have become a good person, so I am going to impose a community

5  service obligation.  I want you out there.  I want your

6  punishment to be positive, constructive.  So I am going to

7  impose 300 hours of community service.  You work that out with

8  your Probation Department.  Okay?  You will improve your

9  community.

10         THE DEFENDANT:  Yes.

11         THE COURT:  So it's five years of probation, 300

12  hours of community service.

13         I am imposing the less restrictive condition

14  proposed today by Officer Espinoza.  I am going to incorporate

15  it by reference even though it is not a matter of record yet.

16  It will be included in the judgment.  If anybody has any

17  problem with its transposition into the judgment, you can let

18  me know that after you get a copy of the judgment.

19         I am imposing a search condition.  Specifically,

20  that provided there is reasonable suspicion to believe that a

21  search of Mr. Hadzovic or his residence or his car or his

22  person, his property, might uncover a violation of the

23  conditions of his supervision, and he has to acquiesce in such

24  a such a search.  Otherwise he is in violation of his

25  conditions of probation.  Any such search has to be conducted

26

1  at a reasonable time and in a reasonable manner.

2          There is a hundred-dollar special assessment, but no

3  fine.

4          Is there anything that I haven't addressed that I

5  should have addressed?

6          MR. DuCHARME:  No, Your Honor.

7          MR. HOYES:  No, Your Honor.

8          THE COURT:  All right.  Thank you.

9          MR. DuCHARME:  Thank you, Your Honor.

10          MR. HOYES:  Thank you.

11          THE COURT:  I forgot something.  Those that don't

12  need it get to keep it.  You have a right to appeal from the

13  sentence I have just imposed.  If you want to do that you have

14  to file a notice of appeal within ten days or you lose your

15  right to appeal.  If you can't afford a lawyer to represent

16  you, one will be appointed for you.

17          Do you understand?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Thank you.

20          THE DEFENDANT:  Thank you, Your Honor.

21          (Matter concludes.)

22

23

24

25

GR     OCR     CM     CRR     CSR